1  MORGAN, LEWIS & BOCKIUS LLP
   Carrie A. Gonell (State Bar No. 257163)
2  Samuel S. Sadeghi (State Bar No. 311785)
   Mayra Negrete (State Bar No. 333491)
3  600 Anton Boulevard, Suite 1800
   Costa Mesa, CA  92626-7653
4  Tel:   +1.714.830.0600
   Fax:   +1.714.830.0700
5  carrie.gonell@morganlewis.com
   sam.sadeghi@morganlewis.com
6  mayra.negrete@morganlewis.com

7  Attorneys for Defendant
   SRS DISTRIBUTION INC.
8

9            UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11

12  ISRAEL LUERA-ESCANDON, on        Case No. **'24CV1121 LL    MMP**
    behalf of others similarly situated,
13                                   **DEFENDANT'S NOTICE OF**
                    Plaintiff,       **REMOVAL TO FEDERAL COURT**
14
           vs.                       28 U.S.C. §§ 1332(a), 1441 and 1446
15
16  SRS DISTRIBUTION INC. DBA
    IMPERIAL SPRINKLER SUPPLY and
17  DOES 1 through 50, inclusive,

                    Defendants.
18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
                    DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, Defendant SRS Distribution Inc. ("SRS" or "Defendant"), removes the above-entitled action from the Superior Court of California in and for the County of San Diego to the United States District Court for the Southern District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. sections 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million.

Removal is based on the following grounds:

## I. PLEADINGS, PROCESS, AND ORDERS

1. On May 23, 2024, Plaintiff Israel Luera-Escandon ("Plaintiff") filed an unverified Complaint in the San Diego County Superior Court, entitled *Israel Luera-Escandon, on behalf of others similarly situated v. SRS Distribution Inc. dba Imperial Sprinkler Supply*, Case No. 37-2024-00023994-CU-OE-CTL ("Complaint").

2. The Complaint alleges causes of action for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) meal period violations; (4) rest period violations; (5) paid sick leave violations; (6) untimely payment of wages; (7) wage statement violations; (8) waiting time penalties; (9) failure to reimburse necessary business expenses; and (10) unfair competition. The Complaint names "SRS Distribution Inc. dba Imperial Sprinkler Supply" as Defendant.

3. On May 28, 2024, Plaintiff served the Complaint on Defendant. True and correct copies of the Summons, Complaint, and all documents served with the Complaint are attached as **Exhibit A**.

4. Plaintiff seeks to represent the following class:

- "All current and former non-exempt employees who worked for Defendants in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through date of class certification."

*See* Ex. A, Compl. ("Compl."), ¶ 18.

5.     On June 11, 2024, Plaintiff filed a proof of service of summons as to SRS.  A true and correct copy of the Proof of Service of Summons as to SRS is attached as **Exhibit B**.

6.     On June 27, 2024, Defendant filed and served its Answer to the Complaint in San Diego County Superior Court.  A true and correct copy of the Answer is attached as **Exhibit C**.

7.     **Exhibits A through C** constitute all the pleadings, process, and orders served upon or by Defendant, or filed to Defendant's knowledge to date, in the Superior Court action.

## II.    THE REMOVAL IS TIMELY.

8.     This Notice of Removal is timely filed, pursuant to 28 U.S.C. 1446(b), because it is filed and served within thirty days of Defendant's receipt of Plaintiff's Complaint.  *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .").  Plaintiff served his Complaint on Defendant on May 28, 2024.

9.     No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.   THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

10.    This lawsuit is a civil action within the meaning of the Acts of

Congress relating to removal of class actions.  *See* 28 U.S.C. § 1453.

11.    This action is brought by Plaintiff as a putative class action on behalf of a proposed class of more than 100 individuals.  As such, this matter is a "purported class action" as that term is defined pursuant to CAFA.

12.    The Complaint could have been filed in this Court under 28 U.S.C. § 1332(d) because this matter is brought as a class action under California Code of Civil Procedure § 382, diversity of citizenship exists between one or more members of the putative class and Defendant, and, accepting Plaintiff's allegations only for the purposes of this removal, the amount in controversy exceeds, in the aggregate, $5,000,000, exclusive of interests and costs.  Removal therefore is proper pursuant to 28 U.S.C. §§ 1446 and 1453.[1]

### A.    Diversity Of Citizenship Exists.

13.    To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

14.    Here, all requirements are met because Plaintiff is a citizen of California and SRS is a citizen of Delaware and/or Texas, but is not a citizen of California.  Thus, minimal diversity exists and removal is proper.

///

///

---

[1]   Defendant does not concede and reserves the right to contest, at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action.  Defendant further does not concede the merits of any of Plaintiff's allegations or that they constitute a cause of action under applicable California law.

### 1.    Plaintiff is a Citizen of California.

15.    Plaintiff is, and was at the time he filed the Complaint, a citizen of the State of California.  "An individual is a citizen of the state in which he is domiciled . . . ."  *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (*citing Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (*citing Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Domicile is determined by "an individual's 1) residence in a state, and 2) his intent to remain indefinitely."  *Boon*, 229 F. Supp. 2d at 1019.

16.    The Complaint alleges that "Plaintiff Luera-Escandon is an individual over 18 years of age who worked for Defendants in California..."  Compl. ¶ 12.  The Complaint does not allege that Plaintiff is a citizens of any state other than California.  Plaintiff, therefore, is a citizen of California for purposes of removal.

### 2.    Defendant Is Not A Citizen Of California.

17.    SRS is, and was at the time of the institution of this civil action, a corporation formed under the laws of the State of Delaware with its headquarters and principal places of business in the State of Texas.

18.    For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)).  In *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the Supreme Court held that a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities" (*i.e.*, the "nerve center" of the business).  *Id.* at 92-93.  The Court further described the principal place of business as "the place where the corporation maintains its headquarters."  *Id.* at 93.

19.     SRS's principal place of business is Texas because, under *Friend*, 559 U.S. at 93, its "nerve center" is located in McKinney, Texas.  SRS's executive team members are based in the corporate offices in McKinney, Texas, where they exercise day-to-day control of the business and perform the vast majority of their executive and administrative functions.  The majority of SRS's core executive functions, administrative functions, corporate books, and records are in McKinney, Texas.  Therefore, SRS is a citizen of the State of Texas under the "nerve center" test and a citizen of Delaware based on its state of incorporation.

20.     Although Plaintiff has listed fifty fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

21.     Therefore, because Plaintiff and Defendant are not residents of the same state, diversity of citizenship exists.  *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**B.     The Proposed Class Membership is Sufficiently Large.**

22.     CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. §1332(d)(5)) is satisfied here because the putative class has more than 100 members.

23.     In the alleged Class Plaintiff seeks to represent "[a]ll current and former non-exempt employees who worked for Defendants in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through date of class certification."  *See* Compl., ¶ 18.  According to business records, Defendant is informed and believes that as of June 25, 2024, "Defendants" as defined by Plaintiff employed approximately 539 non-exempt employees in California since May 23,

2020.  Defendant is further informed and believes from available data that as of June 25, 2024, approximately 319 of these individuals separated from Defendant in the three years preceding the filing of the complaint.  Thus, the putative class contains more than 100 members.

C.    **The Amount In Controversy Exceeds $5,000,000.**

24.    Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).  Because Plaintiff does not expressly plead a specific amount of class damages, Defendant needs to show it is more likely than not that the amount in controversy exceeds $5 million.  *See Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 376 (9th Cir. 1997).  Defendant's burden to establish the amount in controversy is by a preponderance of the evidence.  *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart* for the proposition that there is no anti-removal presumption against CAFA cases).  A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart*, 135 S. Ct. at 554.

25.    "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages."  *Sanchez v. Russell Sigler, Inc*., 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted); *see also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy").  The ultimate inquiry is what amount

is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts "first look to the complaint in determining the amount in controversy"); *see also Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 993 (9th Cir. 2022) ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.").

26.    Under *Dart*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc*., 974 F.3d 959, 964 (9th Cir. 2020) ("[A] removing defendant's notice of removal *need not* contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc*., 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019)). Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id*. at *3. As detailed below, Defendant plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiff's allegations, and that the Court has jurisdiction pursuant to CAFA. Here, the aggregated claims of the putative class members put into controversy over $5 million in potential damages. 28 U.S.C. § 1332(d)(2).

27.    As explained above, Plaintiff seeks to represent a putative Class of more than 500 members. Based on the allegations in the Complaint and as set forth below, Plaintiff has put more than $5 million in controversy, and thus CAFA

removal is appropriate.[2]

## 1. Plaintiff's Second Cause of Action for Overtime Violations Places at Least $1,633,344.62 in Controversy.

28. Plaintiff alleges in his Complaint that "Defendant *regularly* required Plaintiff and the Class Members to complete work while off-the-clock to complete online trainings and meet the demands of the job." Compl., ¶ 23 (emphasis added). Plaintiff also allege that "Plaintiff and Class Members were required to clock-out for meal periods but continue working to keep up with their workload." *Id.* at ¶ 26. As a result, Plaintiff alleges that "Plaintiff and class members are entitled to recover the full amount of the unpaid overtime, in addition to interest, statutory and civil penalties, and attorneys' fees, and costs to the extent permitted by law." *Id.* at ¶ 36.

29. Based on Plaintiff's allegations, it is plausible and reasonable to assume that Plaintiff seeks to recover at least one hour of overtime wages per week for all putative class members. *Kastler v. Oh My Green, Inc.,* No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations" and simply alleged a "pattern and practice" of failing to pay overtime and minimum wages). Defendant's records reflect that as of June 25, 2024, about 539 non-exempt employees have been employed since May 23, 2020, for a collective total of 53,091 weeks worked. Assuming conservatively that each class member worked one (1) hour of unpaid overtime per week, and using the average hourly base rate

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendant's references to specific damage amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims is without merit and that Defendant is not liable to Plaintiff or any putative class member. In addition, Defendant denies that liability or damages can be established on a class wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

for all putative class members of $20.51 based on Defendant's records, **Plaintiff's overtime wage claim places in controversy at least $1,633,344.62** ($20.51 per hour x 1 hour per week x 1.5 overtime premium x 53,091 work weeks).

**2.    Plaintiff's Third Cause of Action For Failure to Provide Meal Breaks Places at Least $1,088,896.41 in Controversy.**

30.    Plaintiff seeks to recover meal period premiums for the Class for alleged violations of Labor Code Sections 226.7 and 512.  Plaintiff alleges that "Defendants willfully failed in their affirmative obligation to consistently provide Plaintiff and class members compliant, duty-free meal periods of not less than 30 minutes beginning before the fifth hour of hour for each work period of more than five hours per day and a second duty-free meal period of not less than 30 minutes beginning before the tenth hour of hour of work in.…" Compl., ¶ 39.  Plaintiff further alleges that "Defendants willfully failed in their affirmative obligation to consistently pay Plaintiff and class members one additional hour of pay at the respective regular rate of compensation for each workday that a fully compliant meal period was not provided...." *Id.*, ¶ 40.

31.    Thus, taking as true Plaintiff's claim that Defendant did not provide meal breaks, putative class members would be eligible for one hour of premium pay for each day worked.  *See* Compl. ¶ 40; *see also Brinker v. Superior Court*, 53 Cal. 4th 1004, 1039 (2012).  Defendant conservatively assumes a violation rate of one missed meal break per pay period.  Defendant's records reflect that as of June 25, 2024, about 539 non-exempt employees have been employed since May 23, 2020, for a collective total of 53,091 weeks worked.  Accordingly, the total meal period premiums at issue in Plaintiff's Third Cause of Action is at least **$1,088,896.41** (53,091 weeks x 1 hour of premium pay x 1 days x $20.51 = $1,088,896.41)

**3.    Plaintiff's Seventh Cause of Action For Inaccurate Wage Statements Places at Least $1,035,950 in Controversy.**

32.    Plaintiff alleges that Defendant failed to provide accurate, itemized

wage statements.  *See* Compl., ¶¶ 56-60.  Specifically, Plaintiff alleges that "Defendants knowingly and intentionally failed in their affirmative obligation to provide accurate itemized wage statements to Plaintiff and class members resulting in injury to Plaintiff and class members. Specifically, the wage statements issued to Plaintiff and class members did not accurately state each pay period all of the information required by Labor Code § 226(a)(1)-(9)." *Id.*, ¶ 58.  Based on these violations, Plaintiff seeks damages under Labor Code Section 226(e).  *Id.*, ¶ 60.

33.     Labor Code Section 226(e) provides that an employee suffering injury due to an employer's knowing and intentional failure to provide a compliant wage statement as required by Section 226(a) is entitled to recover fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), plus reasonable attorney's fees and costs.  Labor Code § 226(e); *Chen v. Morgan Stanley Smith Barney, LLC*, 2014 WL 4961182, at *2 (C.D. Cal. Oct. 2, 2014).

34.     Here, during the one-year statute of limitations for a claim for Labor Code Section 226 statutory penalties, putative class members were subject to a weekly pay period and thus issued wage statements on a weekly basis.  For the time period of May 23, 2023 to June 25, 2024, Defendant issued approximately 13,855 wage statements to approximately 320 non-exempt employees in California. Assuming a 100% violation rate for inaccurate wage statements based on Plaintiff's allegations, Plaintiff's Seventh Cause of Action places into controversy at least **$1,035,950** in statutory penalties.

**4.     Plaintiff's' Eighth Cause of Action Seeking Waiting Time Penalties Places at Least $1,447,041.60 in Controversy.**

35.     Plaintiff alleges that Defendant willfully failed to pay the putative class all allegedly earned and unpaid wages at the time of discharge or within 72 hours of leaving Defendant's employ.  *See* Compl., ¶ 63.  Labor Code Section 203

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANT'S NOTICE OF REMOVAL

provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). Plaintiff alleges that "Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior notice of his or her intention to quit, and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203 and the IWC Wage Orders." Compl., ¶ 63. According to Defendant's records, as of June 25, 2024, the employment of approximately 317 putative class members terminated more than 30 days ago and within the three years preceding the filing of Plaintiff's complaint. Plaintiff alleges that all putative class members whose employment ended at least 30 days ago are entitled to 30 days of waiting time penalties. *See Id.*, ¶¶ 63-64 (alleging non-payment of wages to Plaintiff and Class Members and that they are "entitled to recover from a waiting time penalty for a period of up to 30 days"). Based on Plaintiff's allegations of failure to pay current and former hourly employees their full wages at the time of discharge, Defendant may reasonably assume "that each terminated putative class member was entitled to 30 days of continuation wages at 8 hours of standard pay per day." *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015); *see also Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties. Applying the average hourly rate for former putative class members of $19.02 per hour to all putative class members based on Defendant's records, and assuming that all class members worked shifts of eight hours, the total

waiting time penalties at issue is at least **$1,447,041.60** ($19.02 per hour x 8 hours per day x 30 days x 317 former non-exempt employees = $1,447,041.60).

**5.    The Complaint Also Seeks Recovery Of Attorneys' Fees That Courts May Consider for Determining the Amount in Controversy.**

36.    Plaintiff seeks to recover attorneys' fees under various provisions of the Labor Code. (Prayer for Relief, ¶ h). Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020).

37.    Although Defendant denies Plaintiff's claim for attorneys' fees, inclusion of attorneys' fees for purposes of removal by calculating 25% of the amount in controversy in this case, as detailed above, adds at minimum another $1,301,308.16 in controversy (25% of $5,205,232.63), bringing the total amount in controversy to at least **$6,506,540.79**.

38.    Again, this excludes the amount placed in controversy by for Plaintiff's six other causes of action.

39.    Therefore, although Defendant has plausibly alleged that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

**IV.    VENUE**

40.    This action was originally filed in San Diego County Superior Court. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a),

because it encompasses the county in which this action has been pending.

**V.    NOTICE**

41.    Defendant will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

**VI.    CONCLUSION**

42.    Based on the foregoing, Defendant respectfully requests that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated:  June 27, 2024                MORGAN, LEWIS & BOCKIUS LLP


By  */s/ Carrie A. Gonell*
_____
Carrie A. Gonell
Samuel S. Sadeghi
Mayra Negrete
Attorneys for Defendant
SRS DISTRIBUTION INC.